IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

SHEILA L DEXTER

    Plaintiff,
v.                                    CASE NO. 1:15-cv-161-MP-GRJ

CAROLYN COLVIN, Commissioner
of Social Security,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals from a partially-favorable final decision of the Commissioner of Social Security ("the Commissioner") awarding disability insurance benefits and Supplemental Security Income based upon a disability onset date of October 22, 2013.  ECF No. 1.  The Commissioner has answered, and both parties have filed briefs outlining their respective positions.  ECF Nos. 9, 12, 13.  For the reasons discussed below, the undersigned recommends that the Commissioner's decision be **AFFIRMED**.

# I.  PROCEDURAL HISTORY

Plaintiff protectively filed for SSI and DIB on May 21, 2012, alleging disability beginning August 16, 2011, due to leg pain, bone disease, hearing problems, pelvic problems, diabetes, spasms, hypertension, acid reflux disease, and gastroesophageal reflux disease  R. 183-89, 220, 225. The claim was denied initially and on reconsideration, and Plaintiff requested a hearing, which was held before an Administrative Law Judge ("ALJ") on March 4, 2014.  R. 36.  On March 21, 2014, the  ALJ found Plaintiff disabled as of October 22, 2013.  R. 22-30.  The Appeals Council denied review.  R. 1-8.  This appeal followed.  Plaintiff's sole issue for appeal is that substantial evidence does not support the ALJ's finding that the onset date of Plaintiff's disability was October 22, 2013.  ECF No. 12.

# II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of

---

[1] *See* 42 U.S.C. § 405(g) (2015).

a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the

---

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

district court with sufficient reasoning to determine that the Commissioner properly applied the law.[5]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, he is not disabled.[9] Second, if a claimant does not have any impairment or

---

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2015 version unless otherwise specified.).

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.[10]  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.[11]  Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.[12]  Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14]  The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the

---

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

[12] 20 C.F.R. § 404.1520(e).

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); *see also* Doughty v. Apfel, 245 F.
3d 1274, 1278 (11th Cir. 2001).

claimant can perform currently exists in the national economy.[15]  The Commissioner may satisfy this burden by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion."[17]  In a situation where both exertional and non-exertional impairments are found, the ALJ is

---

[15] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:

> In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

[16] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

[17] Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996). See Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19] Such independent evidence may be introduced by a Vocational Expert's ("VE") testimony, but this is not the exclusive means of introducing such evidence.[20] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

### III. SUMMARY OF THE RECORD

#### A. *Findings of the ALJ*

The ALJ found that since the alleged onset date of August 16, 2011, the Plaintiff has had the severe impairments of disorders of the knees,

---

[18] Walker, 826 F.2d at 1003.

[19] Wolfe, 86 F.3d at 1077-78.

[20] *See id.*

obesity, and history of bilateral cholesteatoma (resulting in bilateral mixed hearing loss).  The ALJ found that since the alleged onset date, Plaintiff's severe impairments did not meet or medically equal a listed impairment. The ALJ determined that since August 16, 2011, Plaintiff retained the residual functional capacity to perform sedentary work with additional postural and environmental limitations.  Plaintiff was unable to perform any past relevant work since August 16, 2011.  Prior to that date, Plaintiff was a "younger individual" under the Social Security regulations.  The ALJ determined that on October 22, 2013 – the date that Plaintiff decided to proceed with a right knee total arthroplasty – the Plaintiff's age category changed to an individual closely approaching advanced age, applying the age categories non-mechanically.  Prior to that date, based on the testimony of a vocational expert, there were jobs that existed in the national economy that Plaintiff could perform, such as addresser; cutter/paster, press clippings; and stuffer.  Beginning October 22, 2013, the date that Plaintiff's age category changed, there were no jobs that Plaintiff could perform, and she therefore became disabled on that date. R. 24-30.

## B.  *Medical Evidence*[21]

Plaintiff underwent left total knee arthroplasty on September 17, 2012.  Post-operative imaging studies in January and July 2013 showed no complications, and Plaintiff was cleared to return to employment by her treating provider in January 2013.  In March 2013 Plaintiff was noted to ambulate without assistance.  With respect to her right knee, in July 2013 only mild degenerative changes were noted.  R. 449-72; 484-517; 564-611.

Replacement of Plaintiff's right knee was recommended on October 22, 2013, and surgery was performed on October 28.  Although the surgery was successful, due to musculoskeletal realignment following the surgery Plaintiff presented with severe right ankle pain.  Her treating orthopedist, Dr. Vlasak, reported that the right ankle condition was a permanent impairment.  R. 564-611.

State agency medical consultants determined that Plaintiff was capable of a range of light exertional work.  R. 60-67, 68-75, 78-88, 89-99.

---

[21]The Court's summary of the evidence is limited to Plaintiff's bilateral knee disorders because that impairment underlies her claim on appeal.

## C. *Summary of Hearing Testimony*

Plaintiff's date of birth is December 17, 1963, and she was 50 years old at the time of the March 2014 hearing. Plaintiff had a high school diploma and was 5'4" and weighed 300 pounds. Regarding the alleged August 16, 2011, onset date of disability, Plaintiff testified that she was fired from her job as a hotel laundry worker because of knee and ankle problems. She further testified that she had not worked since that date, nor had she looked for work. On further questioning, Plaintiff admitted that she collected unemployment compensation and looked for hotel and laundry work. R. 40-45.

The VE testified that Plaintiff's past relevant work was as a cleaner/housekeeping, an unskilled job with a light exertional level. A person closely approaching advanced age with the RFC for sedentary work, with additional postural and environmental limitations, could perform the representative jobs of addresser, cutter and paster of press clippings, and stuffer. A person with an RFC for less than sedentary work could not perform those jobs. Further, a person who was off task due to pain for

more than 10 percent of the date would be unable to perform the sedentary jobs identified by the VE.  R. 55-59.

## IV.  Discussion

Plaintiff argues that she was disabled as of her alleged August 16, 2011, onset date because at that time she was morbidly obese, walked with a left antalgic gait because of left knee advanced tricompartmental degenerative joint disease and bone-on-bone arthritis, and as a result of severe pain could not stay on task an acceptable percentage of the workday.  ECF No. 12 at 7-8.  She asserts that all of the severe impairments identified by the ALJ were present "at the same or greater level of impairment in August 2011." *Id*. at 9-10.

As support for her argument, Plaintiff relies on a September 16, 2011, letter from her treating orthopedic surgeon, Dr. Vlasak, stating that conservative treatment of her left knee had failed and recommending total knee replacement.  *Id*.; *see* R. 496 (Dr. Vlasak's letter reporting on consult).  Plaintiff also points to a July 2011 radiology report identifying severe tricompartmental osteoarthritis of the left knee.  *Id*.; *see* R. 517.

Plaintiff had a voluntary inpatient admission at Meridian Behavioral Healthcare in April 2013, where she was found to suffer from major depression and chronic pain. ECF No. 12 at 11; *see* R. 540-44. Finally, Plaintiff points to Dr. Vlasak's clinical assessment of pain in December 2013 assigning "marked" functional limitations due to pain, which Plaintiff asserts covered the time period from September 15, 2011, to December 19, 2013. ECF No. 12 at 11-12, *see* ECF No. 559-63. Plaintiff concludes that "on the face of the record it is clear that [Plaintiff's] impairments were more severe, at least in theory, in the summer of 2011 before either of her knees were totally replaced by her orthopedic surgeon[.]" ECF No. 12 at 12.

In determining that the record supported a determination that Plaintiff's onset date was October 22, 2013, and that she could perform sedentary work prior to that date, the ALJ observed that there was no credible evidence in the record that Plaintiff's employment ended in August 2011 due to a medical condition. R. 27. At the hearing, Plaintiff could identify no medically significant event that occurred on that date. *See* R. 42-43. Plaintiff had previously stated that she lost her job in a hotel

laundry because she overloaded a machine. R. 27; *see* R. 225. The ALJ observed that Plaintiff's alleged onset date of August 16, 2011, was not corroborated by contemporaneous medical records. R. 27. The ALJ noted that Plaintiff's September 2012 left total knee arthroplasty was successful, with Plaintiff being cleared to return to work in January 2013. Although Plaintiff complained of right knee pain, the radiology studies in July 2013 showed only mild degenerative changes. *Id*.; *see* R. 586. The ALJ stated that the limitation to a reduced range of sedentary work accounted for Plaintiff's knee disorder. R. 27. The ALJ afforded great weight to the January 2013 treating source report documenting Plaintiff's ability to return to work following recovery from left knee replacement with supporting clinical evidence. R. 28; *see* R. 580. The ALJ also gave some weight to the state agency medical consultants' opinions that Plaintiff was capable of a range of light work, but found that a restriction to sedentary work was more appropriate based on the totality of evidence, including the combination of Plaintiff's musculoskeletal impairments and obesity. R. 28.

Dr. Vlasak's notes reflect that in September 2011 Plaintiff's left knee condition was "severe" and that the only surgery he would recommend was

left total knee replacement; the right knee showed only "mild" degenerative changes. R. 496. As the ALJ found, Plaintiff testified that at this time, following her August 2011 termination, she had applied for and received unemployment benefits "indicating some willingness and capacity for work." R. 27.

Further, the Plaintiff's reliance on Dr. Vlasak's December 2013 pain assessment as support for an earlier onset date is misplaced. Although the form asked the provider to answer questions relating to Plaintiff's condition from "09/15/2011 to Present," Dr. Vlasak's assessment, finding marked functional limitations due to pain, includes his notation that "Plaintiff's [right] ankle post-traumatic arthritis causes marked pain & marked disability to ADL's from orthopedic standpoint." R. 563. The medical evidence reflects that Plaintiff's right ankle impairment arose following her October 28, 2013, right total knee replacement due to musculoskeletal realignment. R. 564. On December 12, 2013, Dr. Vlasak observed that "[c]learly her right ankle will be a permanent impairment and a permanent disability for her." *Id*.

Based on the medical evidence of Plaintiff's impairment as of the time that she decided to proceed with a right knee total arthroplasty, and

because Plaintiff's age category at that time changed to "an individual closely approaching advanced age," (with Plaintiff imminently turning age 50 in December 2013), the ALJ determined that Plaintiff became disabled as of October 22, 2013.[22]  On this record, in view of the medical evidence and Plaintiff's testimony as summarized above, the Court finds that ALJ's determination of Plaintiff's onset date is supported by substantial evidence.

### V.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner should be **AFFIRMED**.

**DONE AND ORDERED** this 8th day of September 2016.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

---

[22] If a claimant is within a few days to a few months of reaching an older age category and using the older category would result in a determination or decision that someone is disabled, the Commissioner will consider using the older age category.  20 C.F.R. § 404.1563(b).

*Page 16 of 16*

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**